# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MARK S. BEDNAR, et. al.,**

      **Plaintiffs,**

      **v.**                                             **Case No. 07-C-1062**

**STATE FARM MUTUAL**
      **AUTOMOBILE INSURANCE CO., et., al.,**

      **Defendants.**

---

## DECISION AND ORDER REGARDING THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

---

On May 30, 2008 defendants State Farm Mutual Automobile Insurance Co, Debra D. Rossi, Roman Catholic Diocese of Joliet, St. Irene Catholic Church, and State Farm Fire and Casualty Company (all of whom shall be referred to here collectively as "State Farm") filed a motion for summary judgment. (Docket No. 49, 45 (brief in support).) On July 2, 2008, defendant Catholic Mutual Relief Society of America ("Catholic Mutual") responded and filed its own motion for summary judgment. (Docket No. 53, 52 (brief in support).) State Farm has filed a combined reply and response. (Docket No. 56.) The pleadings on these motions are closed and the matter is ready for resolution. The parties have previously consented to the full jurisdiction of a magistrate judge.

**FACTS**

The underlying facts that give rise to the above-entitled action are largely inconsequential to the present dispute and therefore shall be restated here only very briefly. On February 20, 2005, Debra D. Rossi ("Rossi") was driving in Racine County, Wisconsin when she was involved in a traffic accident with a vehicle driven by Mark S. Bednar. As a result of this traffic accident, Mark S.

Bednar was injured and his wife, Karen J. Bednar, who was a passenger in the vehicle, was killed. At the time of this accident, Debra Rossi was working as a volunteer on behalf of St. Irene Catholic Church in Warrenville, Illinois.

The dispute currently before the court is a question of insurance coverage, specifically, the order in which the defendants' insurance policies shall pay to cover any damages that may be awarded to the plaintiffs.

The parties do not dispute the operative facts regarding insurance coverage. Rossi is covered under her personal automobile insurance policy issued by State Farm Mutual Insurance Company with limits of $250,000 per person and $500,000 per occurrence. The parties agree that this policy provides primary coverage and therefore must be exhausted first before any of the other policies will be considered. Additionally, Rossi has a personal umbrella policy with State Farm Fire and Casualty with a $1,000,000 limit. Coverage for this incident is also provided pursuant to a certificate of insurance coverage issued by Catholic Mutual, a self-assurance fund of the Catholic Church, with a limit of $500,000 per occurrence and excess liability coverage with a limit of $35,000,000.

It is the position of State Farm that after Rossi's personal automobile liability insurance policy is exhausted, coverage is next provided by Catholic Mutual to the extent of its per occurrence liability limit of $500,000. Thereafter, the State Farm umbrella policy and the Catholic Mutual excess liability certificate operate to provide coverage on a pro rata basis (i.e. State Farm would pay $1 for every $35 Catholic Mutual pays). (Docket No. 45 at 2.)

Catholic Mutual submits that it is not an insurance company. It states that, under its policy, if a volunteer like Rossi is using her own vehicle, all coverage provided is considered excess. As such, it submits that its coverage is triggered only after both of the State Farm policies, including the umbrella policy, are exhausted. At that point, Catholic Mutual would first pay under its

$500,000 per occurrence coverage and then under its $35,000,000 additional coverage. (Docket No. 52 at 3.)

All of the relevant documents contain limitations on the coverage provided on the condition that other insurance coverage is available. State Farm's umbrella policy states: "**Other Insurance. This policy is excess over all other valid and collectible insurance.**" (Docket No. 45-5 at 13, ¶5 (emphasis added).)

Catholic Mutual's $500,000 per occurrence coverage certificate states:

We do not cover Bodily Injury or Property Damage:

> 1. Resulting from the ownership, operation, maintenance, use, loading, or unloading of:
>
>> (a) any automobile owned, operated by, rented or loaned to any Protected Person(s) or organization included under "Who is a Protected Person(s) Under This Certificate". This exclusion does not apply to Religious, Volunteers and Employees, while using their own automobiles on behalf of the Certificate Holder or other Protected Person(s), except **this coverage is excess over the Religious, Volunteers and Employees own coverage** or the State financial responsibility(ies) or compulsory insurance liability limit(s) in which the automobile is operated, whichever is higher . . . .

(Docket No. 45-6 at 28 (emphasis added).) The certificate further states:

> 1. INSURANCE. The protection afforded by this certificate is excess over any valid and collectible insurance (including any valid and collectible insurance, which names a protected person(s) as an additional insured). **We will not contribute on any basis under an Other Insurance or similar provision under any valid and collectible insurance policy**.

(Docket No. 45-6 at 49 (emphasis added).)

Catholic Mutual's $35,000,000 excess coverage certificate states:

> INSURANCE. If other valid and collectible coverage or insurance is available to you which covers a loss also covered by this form, other than coverage or insurance that is specifically purchased as being in excess of this form, **this form shall operate in excess of, and shall not contribute with, such other coverage or insurance**.

3

>Nothing herein shall be construed to make this form subject to the terms and conditions of such other coverage or insurance.

(Docket No. 45-6 at 80 (emphasis added).)

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**ANALYSIS**

**Choice of Law**

This case comes before the court on diversity jurisdiction pursuant to 28 U.S.C. § 1332, and thus this court is required to apply state substantive law. Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087 (7th Cir. 1999). The relevant polices and certificates were issued in Illinois. The underlying accident occurred in Wisconsin, where this action is venued. The parties agree that there are no substantive differences between Wisconsin and Illinois law regarding the issues presently before the court. The parties further agree that Wisconsin law is applicable to present case.

The court concurs that Wisconsin law applies, which means that it must attempt to predict how the Wisconsin Supreme Court would decide the issues presented here. Id. (citing Allen v. TransAmerica Ins. Co., 128 F.3d 462, 466 (7th Cir. 1997)). "Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." Id. "In the absence of Wisconsin authority, [a federal court] may consider decisions from other jurisdictions." Id. (citing Valerio v. Home Ins. Co., 80 F.3d 226, 228 (7th Cir. 1996)).

**Order of Coverage**

When a court is asked to construe an insurance contract, like any contract, the court must attempt to ascertain the intent of the parties. Meyer v. Michigan Mut. Ins. Co., 2000 WI App 37, ¶8, 233 Wis. 2d 221, 607 N.W.2d 333 (citing Davis v. Allied Processors, Inc., 214 Wis. 2d 294, 298, 571 N.W.2d 692 (Ct. App. 1997)). If possible, the intent of all parties should be given effect. Oelhafen v. Tower Ins. Co., 171 Wis. 2d 532, 538, 492 N.W.2d 321, 324 (Ct. App. 1992) (citing Schoenecker v. Haines, 88 Wis. 2d 665, 672, 277 N.W.2d 782, 785 (1979)

In Schoenecker, 88 Wis. 2d 665, 277 N.W.2d 782, the Wisconsin Supreme Court addressed the issue of how insurance policies should be applied when two separate policies cover the same

loss but yet both policies say that the insurer has no obligation to pay if some other insurance covers the loss. The court noted that there are essentially three varieties of "other insurance" clauses: (1) "'excess clause,' in which the insurer's liability extends only to the amount by which the loss exceeds the coverage of all other valid and collectible insurance up to the limits of the excess policy"; (2) "'escape clause,' which provides that there is no coverage when there is other valid and collectible insurance"; and (3) "'pro rata clause,' which provides that an insurer will pay its 'pro rata' share of the loss, usually in the proportion that its policy limit bears to the total applicable limits of all insurance involved." Id. at 671, 277 N.W.2d at 785. If possible, each policy's other insurance provision will be given effect. Id. at 672, 277 N.W.2d at 785. However, "[i]f it is impossible to give effect to both because they are directly conflicting, then neither will be given effect and the loss will be prorated between the concurrent insurers." Id. at 672-73, 277 N.W. 2d at 785.

All of the relevant clauses are classifiable as excess clauses. But not all excess clauses are created equal. In discerning the effect that should be given to the particular clauses, it is necessary for the court to consider the policies or certificates as a whole. See Oelhafen, 171 Wis. 2d at 538, 492 N.W.2d at 323.

The parties agree that the State Farm primary automobile liability policy must come first in the order of insurance coverage. The parties also agree that Catholic Mutual's $35,000,000 certificate is in the last line of coverage. However, the parties disagree if this $35,000,000 certificate is alone in this last position or whether it shares it with State Farm's umbrella policy.

Thus, the critical question before the court is what coverage immediately follows the State Farm primary automobile liability policy? State Farm submits that Catholic Mutual's $500,000 certificate comes next; Catholic Mutual contends that State Farm's umbrella policy comes next. However, the court believes there is a third position, where Catholic Mutual's $500,000 certificate

6

and State Farm's umbrella policy both fall into this second line of coverage and, because each is repugnant to the other, coverage is pro rated between the two.

State Farm's umbrella policy and $500,000 Catholic Mutual certificate each contain clauses stating that each is excess to any other "valid and collectible insurance," and each shall not contribute on any basis to any other insurance. (Docket No. 45-5 at 13, ¶5; Docket No. 45-6 at 49.) In this regard, each conflicts with the other. However, simply because insurance policies contain excess insurance clauses that are directly conflicting does not mean that the coverages are repugnant. Repugnance requires more than merely conflicting language. Rather, before two insurance coverages may be found to be repugnant, there must be equivalence in excess insurance clauses and equivalence in the coverage provided. See 15 Couch on Ins. 3d § 220:42

"The purpose of both excess and umbrella coverage is to protect the insured in the event of a catastrophic loss in which liability exceeds the available primary coverage." Couch § 220:32 (footnote omitted). Because coverage is not triggered absent a catastrophic loss, the premium paid for umbrella coverage is significantly less than the premium charged for equivalent primary coverage. Davis v. Allied Processors, 214 Wis. 2d 294, 300, 571 N.W.2d 692, 694-95 (Ct. App. 1997).

The rationale for obtaining both the Catholic Mutual $500,000 certificate and the State Farm umbrella policy are the same; both seek to protect the insured in the event of a catastrophic loss exceeding the coverage provided by the primary automobile liability policy. Neither is triggered until the primary liability insurance is exhausted. This sort of excess coverage is what each insured expected, and this is the risk each insurer assumed. Additionally, were it not for the other insurer, each insurer would provide coverage once the primary liability policy is exhausted.

Therefore, because the rationale underlying each is identical, each provides the same sort of excess insurance coverage, and each contains conflicting excess insurance clauses, it is the

7

conclusion of the court that the Catholic Mutual $500,000 certificate and the State Farm umbrella policy are repugnant to each other, and thus each must provide coverage on a pro rated basis depending upon coverage limits with Catholic Mutual contributing $1 for every $2 State Farm contributes.

Although the excess insurance clause in the $35,000,000 Catholic Mutual excess liability certificate is largely similar to the clauses in its own $500,000 certificate and State Farm's umbrella policy, the rationale and purpose behind the $35,000,000 excess liability certificate is not equivalent. The $35,000,000 excess liability certificate is designed as a true coverage of last resort. It is, by its own terms, excess to its own $500,000 excess liability certificate, which is in turn excess to the volunteer's own primary automobile liability insurance. It does not provide coverage on the same "level" as the State Farm umbrella policy. The $35,000,000 certificate may be regarded as an "excess-excess coverage," or perhaps "super-umbrella insurance." Regardless of what the proper term is for this type of coverage, it is clear that the contracting parties intended this coverage to be last in line.

Because the coverage provided by this certificate is not equivalent to the coverage provided in the State Farm umbrella policy, and the State Farm umbrella policy is equivalent to the $500,000 Catholic Mutual certificate, the court shall give effect to the contracting parties' intent and place the $35,000,000 Catholic Mutual certificate as the last in the line of coverage.

**THEREFORE**, based upon the foregoing, the court enters the following **ORDER** resolving the parties' motions for summary judgment, (Docket No. 49; Docket No. 53):

Insurance coverage beyond that provided in the State Farm primary automobile liability policy shall be provided next by the $500,000 Catholic Mutual certificate and the State Farm umbrella liability policy on a pro rated basis depending upon coverage limits with Catholic Mutual providing $1 in coverage for every $2 State Farm provides.

Insurance coverage beyond the State Farm primary automobile liability policy, the $500,000 Catholic Mutual certificate, and the State Farm umbrella liability policy shall be provided by Catholic Mutual's $35,000,000 certificate.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin this <u>3rd</u> day of September 2008.

<u>s/AARON E. GOODSTEIN</u>
U.S. Magistrate Judge